

FILED

Sep 23 2019, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jason M. Smith
Smith Law Services, P.C.
Seymour, Indiana

ATTORNEYS FOR APPELLEE

Debra A. Mastrian
Suzannah W. Overholt
Elizabeth S. Traylor
SmithAmundsen LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mathew R. DuSablon,

*Appellant-Defendant,*

v.

Jackson County Bank,

*Appellee-Plaintiff.*

September 23, 2019

Court of Appeals Case No.
18A-MI-2259

Appeal from the Jackson Superior
Court

The Honorable Bruce A.
MacTavish, Special Judge

Trial Court Cause No.
36D01-1802-MI-15

**Najam, Judge.**

# Statement of the Case

[1] In two notices of appeal filed with our Court,[1] Mathew R. DuSablon stated that he was appealing the trial court's entry of a preliminary injunction, the court's subsequent conversion of that preliminary injunction into a permanent injunction, an order in which the trial court found DuSablon to be in contempt, a September 2018 sanctions order, and an October 2018 sanctions order. DuSablon asserted that Indiana Appellate Rules 14(A)(1) and 14(A)(5) provided that he may appeal each of those various interlocutory orders as a matter of right. DuSablon's counter-claims against plaintiff Jackson County Bank (the "Bank") remain pending in the trial court.

[2] DuSablon purports to raise two issues for our review. However, we conclude that DuSablon has not secured appellate jurisdiction. There is no final judgment, as his counter-claims remain pending in the trial court. The preliminary injunction, which may have supported interlocutory review as of right under Appellate Rule 14(A)(5), no longer exists. And neither permanent injunctions nor contempt findings, without more, are bases for appellate review under Appellate Rule 14(A).

[3] This leaves the two sanctions orders. The October 2018 sanctions order superseded the September 2018 sanctions order, and we agree with DuSablon that the October order is appealable as of right under Appellate Rule 14(A)(1)

---

[1] We later consolidated the two appeals.

as an order for the payment of money. However, DuSablon raises no actual argument on appeal regarding the payment of money under that order, to say nothing of an argument supported by cogent reasoning and citations to the record. Accordingly, there is nothing for this Court to review. We therefore dismiss this appeal.[2]

## Facts and Procedural History[3]

[4] On February 28, 2018, the Bank filed its complaint against DuSablon on the ground that he was in violation of a noncompete agreement with the Bank. The Bank sought a preliminary and permanent injunction. DuSablon moved to dismiss the Bank's complaint, which the trial court denied, and filed counter-claims against the Bank.

[5] In August, after a fact-finding hearing on the Bank's request for a preliminary injunction, the trial court found as follows:

---

[2] After the Bank filed its complaint against DuSablon for his alleged violation of a noncompete agreement, DuSablon responded as follows: he refused to comply with the Bank's discovery requests, for which the trial court sanctioned him; he refused to comply with the court's entry of a preliminary injunction, for which the court found him to be in contempt; he attempted to delay the proceedings in the trial court by improperly removing the case to federal court, for which the federal district court sanctioned him; and he now attempts to appeal several interlocutory orders that are not appealable as a matter of right, dedicating his arguments on appeal to the merits of orders that are not properly before us.

Moreover, while we respect vigorous advocacy, we must agree with the Bank that much of DuSablon's lead brief on appeal and reply brief are riddled with impertinent attacks on opposing counsel and the trial court. We have disregarded such language in our consideration of this appeal. *See, e.g.*, *WorldCom Network Servs., Inc. v. Thompson*, 698 N.E.2d 1233, 1236-37 (Ind. Ct. App. 1998), *trans. denied*. We also direct the Clerk of this Court to send a copy of this opinion and the parties' briefs to the Indiana Supreme Court Disciplinary Commission, which has exclusive jurisdiction to discipline an attorney, where appropriate, for violations of the Rules of Professional Conduct.

[3] We agree with the Bank that the Statement of Facts in DuSablon's brief is not in accordance with the standard of review appropriate to any of the orders DuSablon purports to appeal, and we disregard his Statement of Facts accordingly. *See* Ind. Appellate Rule 46(A)(6)(b).

1.    [The Bank] is an Indiana state chartered bank that provides consumer banking services to customers as well as investment services . . . .

2.    In September 2007, [the Bank] hired DuSablon as an Investment Representative to provide investment services to [the Bank's] customers.

3.    On September 12, 2007, DuSablon executed the Agreement, which includes provisions barring DuSablon from disclosing confidential [Bank] information, requiring the return of [Bank] property upon his termination, barring competition for a reasonable period of time within a reasonable geographic area after termination, and prohibiting him from soliciting and diverting employees, certain customers, and prospective customers of [the Bank].

4.    Specifically, the Agreement provides that:

> DuSablon covenants and agrees not to enter the employment of, or perform any advisory or consulting service for, or make a substantial investment in, any branch, office or satellite of a financial services business, investment services business, or a financial institution . . . which branch, office or satellite is located in any county in which [the Bank] has a branch or office for a period of twelve (12) months from the date of termination of employment with [the Bank], irrespective of who terminated the employment or why it was terminated.

(Agreement, Section 1.)

5.    The Agreement further provides that:

DuSablon agrees that he will not directly or indirectly at any time during the Business Protection Period solicit or induce or attempt to solicit or induce any employee of [the Bank] to terminate his or her employment, representation or other association with [the Bank].

(Agreement, Section 2(b).[)] The Agreement defines "Business Protection Period" as the time DuSablon was employed by [the Bank] and for a period of twelve (12) months after such employment ends. (Agreement, Section 2(a).)

6. [The Bank] has offices in the following counties (the "Restricted Area"): Jackson, Lawrence, Jennings, Monroe and Bartholomew.

7. DuSablon's responsibilities as an employee of [the Bank] included pursuing new business on [the Bank's] behalf, developing investment relationships with current and prospective customers of [the Bank], and selling insurance and financial products for [the Bank's] benefit.

8. To accomplish these tasks, DuSablon relied upon direct marketing and referrals from [the Bank], [the Bank's] employees, and [the Bank's] branches.

9. DuSablon was also responsible for compliance requirements in accordance with [the Bank's] procedures, as well as the requirements of [the Bank's] broker-dealer, INVEST Financial Corporation ("INVEST"), for which he also served as [a] registered representative.

10. DuSablon executed the purchase and sales of securities through INVEST for [the Bank's] customers.

11.     In late July 2017, DuSablon approached [the Bank's] Chief Wealth Management Officer, George Spray, and told Spray that he heard a rumor that INVEST was being sold to LPL Financial ("LPL"). [The Bank] subsequently considered alternative broker-dealers, and [it] ultimately decided to contract with Raymond James. [The Bank's] change from INVEST/LPL to Raymond James became effective on or about January 16, 2018.

12.     On January 8, 2018, just days before the change to Raymond James was to occur, DuSablon resigned and voluntarily terminated his employment with [the Bank].

13.     Almost immediately after resigning from [the Bank], DuSablon became a registered representative of LPL[] and created a new business entity, New Legacy Wealth Management, to offer the same investment and other financial services and advice that he performed while employed by [the Bank].

14.     DuSablon also opened an office which is located just two blocks from [the Bank's] main branch in Seymour and provides his services from that office.

15.     As of July 9, 2018, the day DuSablon was deposed in this case, every single customer of his at New Legacy Wealth Management was a former [Bank] investment services customer that he served while employed by [the Bank].

16.     DuSablon's assistant at [the Bank], Erin Goodpaster, resigned the very day after DuSablon resigned.

17.     Goodpaster admitted under oath . . . that while she and DuSablon were still employed by [the Bank] DuSablon discussed with her the possibility of her joining him in his new venture after he left [the Bank].

Appellant's App. Vol. 2 at 16-19.  The court then concluded in part as follows:

> 13.      . . . [D]espite DuSablon's contention . . . that he was an
> employee of INVEST, not [the Bank], DuSablon received W-2
> statements from [the Bank], and the Agreement specifically states
> that DuSablon was hire[d] as an employee of [the Bank].  (*E.g.*,
> Agreement, Recitals B-D.)  Whether or not DuSablon might also
> have been an employee of INVEST or some other entity while he
> was employed by [the Bank] is not relevant . . . .

> 14.      DuSablon has violated the Agreement by opening his new
> business just blocks away from [the Bank] and by soliciting
> Goodpaster to leave [the Bank] and join him. . . .

*Id.* at 21.

In September, about two weeks after the court's entry of the preliminary injunction, the court entered an "Order on Sanctions and Attorney Fees" (the "September Fees Order").  According to the September Fees Order:

> [The Bank] served discovery to [DuSablon] and non-parties
> including . . . Goodpaster and [DuSablon's] new employer.  The
> Court granted [the Bank's] Motion to Expedite this discovery.
> The Court reviewed [the Bank's] discovery [requests, which
> were] limited in scope, focused[,] and relevant to the issues in this
> case.

> [DuSablon's] responses to [the Bank's] discovery [requests] were
> to object to all of the [requests] and to not produce a single
> document.  Discovery under the Indiana Trial Rules is supposed
> to be open[,] liberal[,] and self-executing.  The Court granted [the
> Bank's] Motion to Compel . . . on June 20, 2018.

[DuSablon] has engaged in an ongoing pattern to evade responding to relevant discovery requests. [DuSablon] responded to no requests. He then removed this case to the Federal Court the day before the Motion to Compel hearing. Judge Sarah Evans Barker found the removal improper and untimely. This Court should not penalize Du[S]ablon for the removal as he was sanctioned with fees in Federal Court. This Court should consider the timing of the removal in examining Du[S]ablon's conduct. Evidence at the Preliminary Injunction eviden[tiary] hearing showed Du[S]ablon also encouraged a non-party[,] LPL Financial LLC[,] he currently has a relationship with to not respond to the legitimate non-party discovery [requests].

[DuSablon] has engaged in a pattern of obfuscation and delay that violates the spirit, letter[,] and requirements [of] the Indiana Trial Rules . . . relating to discovery.

The Court finds that [DuSablon's] conduct does not justify[] striking any of his claims or defenses. [DuSablon's] conduct clearly justifies the granting of . . . attorney fees. [The Bank's] counsel is given seven (7) days to file an Affidavit setting forth the [Bank's] attorney's fees relating to the Motion to Compel and Opposition to [DuSablon's ensuing request for a] Protective Order. If [DuSablon] wishes to contest the amount of attorney fees he can file a Request for Hearing . . . . If [DuSablon] does not contest the attorney fees he should pay them within thirty (30) days of the filing of [the Bank's] counsel's affidavit.

*Id.* at 24-25 (citations omitted).

[7]     On September 19, DuSablon filed his first notice of appeal in our Court. In that notice, DuSablon stated that he was appealing the trial court's entry of the preliminary injunction as a matter of right pursuant to Indiana Appellate Rule

14(A)(5). He further stated that he was appealing the September Fees Order as an order for the payment of money under Appellate Rule 14(A)(1).

[8] However, DuSablon did not request the trial court to stay its proceedings pending the appeal, and in October the trial court converted the preliminary injunction into a permanent injunction, which DuSablon did not contest. In doing so, the court adopted its findings and conclusions on the preliminary injunction.[4] The court directed that the permanent injunction "shall run until one year from the date of the preliminary injunction on August 20, 2018." *Id.* at 26. In that same order, the court found DuSablon to be in contempt for having "violated the preliminary injunction" by continuing to "conduct[] a competing investment business in Seymour"; for "work[ing] for the investment clients he had while employed at [the Bank]"; and for "provid[ing] investment services to these clients." *Id.* The court's order (hereinafter the "Permanent Injunction and Contempt Order") stated that "[s]anctions for violation of the preliminary injunction are deferred for further hearing." *Id.* at 27.[5]

[9] Also in October, the court revisited the September Fees Order, stating as follows:

---

[4] After the trial court had converted the preliminary injunction into a permanent injunction, DuSablon filed an "Emergency Motion to Stay Enforcement and Effect of Preliminary and Permanent Injunction" in our Court, which we denied. Order at 1, *DuSablon v. Jackson Cty. Bank*, No. 18A-MI-2259 (Ind. Ct. App. Jan. 22, 2019).

[5] In November, the trial court entered separate orders for the permanent injunction and the finding of contempt, but those two orders are substantively identical to their respective portions of the original Permanent Injunction and Contempt Order.

> On September 4, 2018, the Court issued an order on discovery sanctions. The order provided that counsel for [the Bank] was to submit an affidavit of attorney fees within ten days of the order. An affidavit of attorney fees was submitted . . . . The Court's order gave [DuSablon] thirty days . . . to contest the fees. [DuSablon] has not filed an objection to contest the fees, and the Court hereby orders that judgment be entered in favor of [the Bank] and against [DuSablon] in the amount of $5,734.00.

*Id.* at 28 (the "October Fees Order"). The court's award of $5,734 to the Bank was promptly recorded in the court's record of judgments and orders. *See* Appellee's App. Vol. 2 at 13.

[10] DuSablon then filed a second notice of appeal. In that notice, he stated that he was appealing, as a matter of right, the court's interlocutory Permanent Injunction and Contempt Order and October Fees Order. We consolidated DuSablon's two interlocutory appeals, and the trial court stayed further proceedings pending this appeal.

## Discussion and Decision

[11] On appeal, DuSablon raises two issues for our review. First, he challenges the trial court's denial of his motion to dismiss and entry of injunctive relief for the Bank. Second, he asserts that the trial court violated his federal due process rights for various reasons, rendering "all orders entered against DuSablon" invalid. Appellant's Br. at 23.

[12] "It is the duty of this Court to determine whether we have jurisdiction before proceeding to determine the rights of the parties on the merits." *Allstate Ins. Co.*

*v. Scroghan*, 801 N.E.2d 191, 193 (Ind. Ct. App. 2004), *trans. denied*. "Jurisdiction is a question of law we review *de novo*." *Ind. Newspapers, Inc. v. Miller*, 980 N.E.2d 852, 857 (Ind. Ct. App. 2012), *aff'd on reh'g*, 980 N.E.2d 863 (Ind. Ct. App. 2013), *trans. denied*. This Court's typical jurisdiction is over final judgments from our trial courts. Ind. Appellate Rule 5(A). There is no final judgment here, however, as DuSablon's counter-claims remain pending in the trial court. *See* App. R. 2(H)(1).

[13] Nonetheless, this Court "shall have jurisdiction over appeals of interlocutory orders" pursuant to Indiana Appellate Rule 14. App. R. 5(B). As we have explained:

> An appeal from an interlocutory order is not allowed unless specifically authorized by the Indiana Constitution, statutes, or the rules of court. *The authorization is to be strictly construed, and any attempt to perfect an appeal without such authorization warrants a dismissal.*
>
> * * *
>
> . . . There are three ways that this Court has jurisdiction over interlocutory orders under Rule 14: (1) Rule 14(A) allows interlocutory appeals as of right; (2) Rule 14(B) permits discretionary appeals "if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal"; and (3) Rule 14(C) authorizes other interlocutory appeals only as provided by statute.

*Allstate Ins. Co.*, 801 N.E.2d at 193 (emphasis added; citations omitted). There is no dispute that Appellate Rules 14(B) and 14(C) are not at issue here.

[14] Instead, DuSablon asserts that Appellate Rules 14(A)(1) and 14(A)(5) secure our jurisdiction. Appellate Rule 14(A) states:

> Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the Clerk within thirty (30) days after the notation of the interlocutory order in the Chronological Case Summary:
>
> (1) For the payment of money;
>
> * * *
>
> (5) Granting or refusing to grant . . . a preliminary injunction . . . .

[15] We first consider DuSablon's attempt to appeal the preliminary injunction. Appellate Rule 14(A)(5) expressly permits such appeals as a matter of right. However, a preliminary injunction no longer exists in this case. Rather, DuSablon did not seek to have the trial court stay its entry of the preliminary injunction after DuSablon filed his first notice of appeal, and the trial court subsequently converted the preliminary injunction into a permanent injunction. Appellate Rule 14(A)(5) does not speak to permanent injunctions. *Cf. Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 203 (Ind. 2012) (stating that Appellate Rule 14(A)(5) does not apply to temporary restraining orders). Thus, there is no preliminary injunction for DuSablon to appeal under Appellate Rule 14(A)(5).

[16] We next consider DuSablon's attempt to appeal the Permanent Injunction and Contempt Order. Again, the permanent-injunction component of that order

does not render the order appealable as a matter of right. App. R. 14(A)(5). And Appellate Rule 14(A) does not permit appeals as of right from contempt findings in and of themselves. *See id.* Further, the Permanent Injunction and Contempt Order, which deferred "[s]anctions for violation of the preliminary injunction . . . for further hearing," is not an order for the payment of money. Appellant's App. Vol. 2 at 27; *see Rowe v. Ind. Dep't of Corr.*, 940 N.E.2d 1218, 1219-20 (Ind. Ct. App 2011), *trans. denied*. Thus, this interlocutory order is not properly before us.

[17] This leaves DuSablon's attempt to appeal the October Fees Order, which superseded the September Fees Order. We agree with DuSablon that the October Fees Order, which ordered him to pay a specific sum of money by a date certain[6] and was recorded in the trial court's record of judgments and orders, is appealable as of right as an order for the payment of money under Appellate Rule 14(A)(1). However, DuSablon does not actually challenge the October Fees Order on appeal. Rather, he argues only that the entirety of the proceedings before the trial court were so infused with the trial judge's bias for the Bank that "all orders entered against DuSablon" are invalid as a matter of law. Appellant's Br. at 23.

[18] Our scope of review in interlocutory appeals is limited to the interlocutory order on appeal. As our Supreme Court has said, "an interlocutory appeal raises

---

[6] The September Fees Order directed DuSablon to pay the attorney's fees within thirty days of the submission of the Bank's attorney's fees affidavit, and the October Fees Order did not alter that timeframe.

every issue presented *by the order* that is the subject of the appeal." *Tom-Wat, Inc. v. Fink*, 741 N.E.2d 343, 346 (Ind. 2001) (emphasis added). Such appeals are not vehicles through which one may attack the trial court proceedings as a whole and without regard to the order on appeal. *See id.* Indeed, the purpose of Appellate Rule 14(A)(1) in particular "is to provide a remedy to parties compelled to part with money which is tied up awaiting litigation." *Bessette v. Turflinger (In re Paternity of S.R.W.)*, 100 N.E.3d 285, 289 (Ind. Ct. App. 2018). "It seems to us to defeat the purpose of allowing such interlocutory appeals if the party does not actually raise an issue regarding the payment of money" on appeal. *Id.*

[19] DuSablon does not actually raise any issues regarding the payment of money compelled by the October Fees Order. He instead asserts—with virtually no citations to the record in support of his assertions—that the trial judge acted with such bias and partiality in favor of the Bank that no order from the court, including the October Fees Order, can stand. But it is clear from the whole of DuSablon's argument that, insofar as there is a discernable order he is challenging, it is not the October Fees Order but the trial court's denial of his motion for change of venue and the court's various discovery orders, which are not appealable as a matter of right. *See* App. R. 14(A). Only in a sentence on page 48 of his brief on appeal does DuSablon add that, "on the same grounds," the October Fees Order is invalid. Appellant's Br. at 48. Such a passing reference is not an argument supported by cogent reasoning. *See* App. R. 46(A)(8)(a); *Morris v. BioSafe Eng'g, Inc.*, 9 N.E.3d 195, 199 n.2 (Ind. Ct. App.

2014), *trans. denied*. In other words, we conclude that, while the October Fees Order provided a basis for appellate jurisdiction under Appellate Rule 14(A)(1), DuSablon does not actually, specifically, or cogently challenge that order, and, thus, there is nothing "presented by the order" for us to review. *Tom-Wat, Inc.*, 741 N.E.2d at 346.

[20] In sum, DuSablon's purported appeal of the preliminary injunction order, the Permanent Injunction and Contempt Order, or any other order except the October Fees Order is not properly before us. And while the October Fees Order is appealable as a matter of right, DuSablon raises no actual argument on appeal regarding the payment of money under that order. Accordingly, there is nothing for this Court to review, and we dismiss this appeal.

[21] Dismissed.

Bailey, J., and May, J., concur.